FRANKLIN D. LOCKE, Appellant, *v.* THE CITY OF BUFFALO and Others, Respondents.

*Improvement of a public square in the city of Buffalo — the reinforcement and diversion of sewers and water mains, about a part of the square to be used by the State for the erection of a monument, may be done by the city park department — the park department may delegate the work to the department of public parks.*

By chapter 455 of the Laws of 1897 the board of park commissioners of the city of Buffalo were " authorized to take possession of, to govern, manage and direct and to improve and embellish " a public square in that city, and were granted " all the power and authority now by law conferred on or possessed by the common council of said city in respect to the same, and all the power which the said board of park commissioners now possess over the parks of the city of Buffalo and the approaches thereto." Thereafter the city made an appropriation of $25,000 to the park department for the specific purpose of improving the square. Subsequently an act of the Legislature was passed appropriating the sum of $100,000 for the purpose of erecting a monument to the late President William McKinley upon the square. In compliance with the proviso contained in the act the city conveyed to the State a circular parcel of land ninety-six feet in diameter, located in the center of the square, as the site for the monument. The park commissioners then adopted a plan for the improvement of the remainder of the square lying within their jurisdiction,

which involved, among other things, the reinforcement of a sewer within the monument circle and the diversion of other sewers and water mains which crossed the circle, so that they would run around the circle and in that part of the square still under the control of the park department. They also delegated the actual performance of the work to the department of public works.

*Held,* that the reinforcement and diversion of the sewers and water mains was a necessary incident of the improvement of the square and that the expense thereof might properly be paid from the $25,000 fund;

That the park department had power to delegate the actual performance of the work of improvement to the department of public works.

APPEAL by the plaintiff, Franklin D. Locke, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Erie on the 11th day of October, 1904, upon the decision of the court, rendered after a trial at the Erie Special Term, dismissing the plaintiff's complaint, with notice of an intention to bring up for review upon such appeal an order bearing date the 22d day of August, 1904, and entered in said clerk's office, denying the plaintiff's motion for an injunction *pendente lite.*

*W. H. Cuddeback,* for the appellant.

*Charles L. Feldman* and *William S. Rann,* for the respondents.

Judgment and order affirmed, with costs, on opinion of KENEFICK, J., delivered at Special Term.

All concurred.

The following is the opinion of KENEFICK, J., delivered at Special Term:

KENEFICK, J.:

Niagara square is a plot of land, 462 feet square, in the business section of the city. It was laid out as a public square in the original mapping out of the city, and has always been maintained as such. The approaches to the square are four public streets, namely, Court street, Delaware avenue, Niagara street and Genesee street.

By chapter 455 of the Laws of 1897 the board of park commissioners of the city were "authorized to take possession of, to govern, manage and direct and to improve and embellish" the square, and

were granted " all the power and authority now by law conferred on or possessed by the common council of said city in respect to the same, and all the power which the said board of park commissioners now possess over the parks of the city of Buffalo and the approaches thereto." Under the power thus conferred the park commissioners took possession of the square, and have since governed and managed it.

After the enactment of the law above referred to, the city made an appropriation to the park department of $25,000, for the specific purpose of improving this square, and no part of this sum has yet been expended.

By chapter 536 of the Laws of 1902 the Governor was authorized to appoint a commission of five persons, and the commission thus appointed was authorized to procure the erection of a monument on this square to our late President, William McKinley, provided the site should be deeded by the city to the State, and the sum of $100,000 was appropriated by the State to carry out the provisions of the act. The Governor has appointed the commission provided for in the act, and the commission is now engaged in performing the work intrusted to it.

The city has conveyed to the State a circular parcel of land, located in the center of said square, within the circumference of a circle whose diameter is ninety-six feet, upon which to erect the monument.

Certain city sewers and water mains cross the monument site. In connection with the work of constructing the monument by the commission, the park commissioners have adopted a plan for the improvement of the remainder of the square lying within their jurisdiction. Recognizing that the monument will be the chief ornament of the square, the general scheme of improvement planned by the park commissioners is to harmonize the surroundings so as to set off the monument to the greatest advantage. The plan of improvement involves, *first,* the reinforcement of the Genesee street sewer within the monument circle, and the diversion of the other sewers and water mains which cross the circle so that they will run around the circle and in that part of the square still under the control of the park department; *second,* the paving of a circular space fifty-five feet wide around the monument circle for a

walk; *third*, the planting of trees and shrubbery encircling the paved space, and, *fourth*, outside of the trees and shrubbery a paved roadway for vehicle traffic. The estimated expense of the improvement is $28,870.07, of which $7,900 is for reinforcing the Genesee street sewer and diverting the other sewers and water mains, and $20,250.07 for paving, curbing and receivers, and the balance of $720 for engineering and inspection. The park department purposes using the fund of $25,000 above mentioned in doing this work, and have practically delegated the actual performance of the work to the department of public works.

This action challenges the right of the park department to devote any part of the fund of $25,000 appropriated for the improvement of the square to the work of reinforcing the Genesee street sewer and diverting the other sewers and water mains as above stated, and also challenges the right of the park department to delegate the department of public works to perform the work.

It is urged that the work on the sewers and water mains above referred to cannot be properly classed as an improvement of the park lands lying within the square, and that no part of the fund appropriated for the improvement of the square can be devoted to such work, as it would be in violation of section 486 of the city charter,* which provides that "when the city shall borrow or raise money for any particular purpose, it shall be applied only to that purpose."

It must be conceded that the balance of the work provided for, namely, the paving, comes properly within the jurisdiction of the park department, and that the expense thereof can be met out of this fund because it is an improvement of the square. It must be conceded also that the work on the sewers and water mains is necessary so as to prevent the Genesee street sewer from giving way under the weight of the monument and its foundation, and so as to arrange the other sewers and water mains so that in the future it will not be necessary to go upon the monument circle to make repairs or connections. So that the claim of the plaintiff in this respect narrows itself down to the proposition that this work, although necessary and proper, cannot be paid for out of a fund appropriated for the improvement of the square.

---

* Laws of 1891, chap. 105.— [REP.

I am of the opinion that this work is a necessary incident of the improvement of the square contemplated by the park department, and can be paid for from this fund. The park department is given specific power to designate the places in the square where trenches shall be dug for sewers and water mains, and no sewers or water mains can be laid within the square without its permission. That department is also given specific power to cause connections to be made from sewers and water mains to the sidewalk border.* There is nothing in the charter to indicate whether the expense of constructing or repairing sewers within the parks shall be provided for by an appropriation to the park department, or an appropriation to the department of public works. It is true that the charter † provides that the department of public works shall have charge and control of water mains, and of the constructing and maintaining of public sewers, but there is no necessary implication that the appropriation for such works within the parks shall be made to the department of public works rather than to the department of parks. The power given to the park department over this square by express statute is so comprehensive that I have little doubt that it is within the power of the park department to devote a portion of this fund to the doing of the work planned in relation to these sewers and water mains. (*Kittinger* v. *City of Buffalo*, 148 N. Y. 332.) The proposition that the park department cannot delegate the actual performance of this work to the department of public works is without force. Section 317 of the charter ‡ implies that the park department may confer such authority upon the department of public works. This precise question as to the delegation of a duty by one department of the city to another was considered in the case of *Metropolitan Exhibition Company* v. *Newton* (21 N. Y. St. Repr. 73). There the department of public parks were authorized to remove obstructions from territory within the jurisdiction of the park commissioners, and they employed the commissioner of public works to perform the duty. The court said that they had the right to choose any agent they saw fit, and that the mere fact that the commissioner of public works was an officer of the city, having

* See charter, § 316.— [REP.

† See § 271, subds. 1, 2, as amd. by Laws of 1901, chap. 228.— [REP.

‡ As amd. by Laws of 1895, chap. 705.— [REP.

facilities for carrying out the direction of the park department, in no way detracted from the efficiency of the agency.

The only other question suggested in this case is that the improvement contemplated by the park commissioners involves the discontinuance of the city streets above referred to. There is nothing in this case to indicate that these streets ever crossed the square. Indeed, I believe the fact is, that the square was laid out as such in the original mapping out of the city. These streets enter the square upon one side and reappear on the same lines on the other side of the square. The plan of improvement simply diverts the traffic within the square and provides ample space for vehicles and pedestrians.

The suggestion that Niagara square is not the proper place for the monument cannot, of course, be considered. The Legislature has decreed that it shall be located there with the consent of the city, and the city has consented. With such action the court has no concern.

Judgment may be entered dismissing the complaint.